**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| **DOMCO, INC. AND MKWW** | § | |
| **MANAGEMENT, INC.,** | § | |
| | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **V.** | § | **CIVIL ACTION NO. _____** |
| | § | |
| **LIQUID GOLD HOSPITALITY** | § | |
| **GROUP, LLC, STEPHEN ROSS,** | § | |
| **NICOLE ELAM, KEITH MAGRUDER,** | § | |
| **JASON FELT AND DAVID FELT,** | § | |
| | § | **JURY DEMANDED** |
| **DEFENDANTS.** | § | |

## <u>ORIGINAL COMPLAINT</u>

Plaintiffs Domco, Inc. ("Domco") and MKWW Management, Inc. ("MKWW") d/b/a El Tiempo Cantina and Laurenzo's El Tiempo Cantina (collectively, "El Tiempo" or "Plaintiffs") hereby file this Original Complaint ("Complaint") requesting damages, preliminary and permanent injunctive relief, and allege as follows:

### NATURE OF THE ACTION

1.      This is an action for false designation of origin and unfair competition under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, trademark infringement, trademark dilution, and injury to business reputation under the Texas Business and Commerce Code § 16 et seq., unfair competition under the common law of the State of Texas, breach of contract, Texas theft liability act, and, *inter alia*, misappropriation of trade secrets.

### PARTIES

2.      Domco, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.

3.      MKWW Management, Inc. is a corporation organized and existing under the laws of the State of Texas, with its principal place of business in Houston, Texas.

4.      Defendant, Liquid Gold Hospitality Group, LLC, ("LGHG") is a limited liability company with a principal place of business and doing business in Houston and Harris County.  LGHG may be served with process through its registered agent, Stephen Ross, at 1314 Texas Avenue, 3rd floor, Houston, Texas  77002 or any officer of the limited liability company at such place as they may be found.

5.      Defendant Stephen Ross ("Ross") is an individual who resides in Harris County, Texas and is operating LGHG as a manager and may be served with process at 1314 Texas Avenue, 3rd floor, Houston, Texas  77002 or at such place as he may be found.

6.      Defendant Nicole Elam ("Elam") is an individual who resides in Harris County, Texas and is operating LGHG as a manager and may be served with process at 1314 Texas Avenue, 3rd floor, Houston, Texas  77002 or at such place as she may be found.

7.      Defendant Keith Magruder ("Magruder") is an individual who resides in Harris County, Texas and is operating LGHG as a manager and may be served with process at 1314 Texas Avenue, 3rd floor, Houston, Texas  77002 or at such place as he may be found.

8.      Defendant David Felt ("DFelt") is an individual who resides in Harris County, Texas and is operating LGHG as a manager and may be served with process at 1314 Texas Avenue, 3rd floor, Houston, Texas  77002 or at such place as he may be found.

9.    Defendant Jason Felt ("JFelt") is an individual who resides in Harris County, Texas and is operating LGHG as a manager and may be served with process at 1314 Texas Avenue, 3rd floor, Houston, Texas  77002 or at such place as he may be found.

## JURISDICTION AND VENUE

10.    This action arises under § 1125 of the Lanham Act, 15 U.S.C. 1051 et seq.; the Texas Business and Commerce Code § 16 et seq., and the common law of the State of Texas.

11.    This Court has jurisdiction over the parties and subject matter of this action pursuant to 15 U.S.C. § 1121, 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction over the claims in the Complaint that arise under Texas statutory and common law pursuant to 28 U.S.C. § 1367(a).

12.    This Court has personal jurisdiction over Defendants because they conduct business and/or reside in this District.

13.    Venue is proper within this District pursuant to 28 U.S.C. § 1391(b) and (c) because Defendants reside in this District, may be found in this District, and/or a substantial portion of the events giving rise to the claims in this action occurred within this District.

## FACTS

14.    Since 1998, El Tiempo has owned and operated Mexican style "Tex-Mex" restaurants in Houston, Texas. The El Tiempo story actually began with Ninfa Lorenzo and the famous "Original Mama Ninfa's" restaurant on Navigation.  The Executive Chef and Co-owner of El Tiempo is "Mama Ninfa's" grandson, Domenic Laurenzo. The

original Mama Ninfa's restaurant on Navigation was not only the home of Roland Laurenzo (the President of El Tiempo) but was also the birthplace of a family business that has transcended for over 40 years. It is often said that Ninfa Lorenzo introduced Houstonians to a style of Mexican food (Tex-Mex) that became and remains a favorite. For many years, El Tiempo has been dedicated to perfecting what Ninfa Lorenzo introduced and every aspect of what Houstonians have come to know as authentic Tex-Mex cooking.  El Tiempo has done this task diligently and successfuly under the trademarks "El Tiempo Cantina" and "Laurenzo's El Tiempo Cantina."

15.    In April of 1998, Plaintiffs opened their first "El Tiempo Cantina" restaurant located at 3130 Richmond Avenue. Since that time, Plaintiffs have expanded to open five (5) other "El Tiempo Cantina" restaurants in Houston, Texas, including the original location where the "Original Mama Ninfa's" first opened its doors on Navigation in Houston's Second Ward.

16.    El Tiempo owns and operates an Internet website located at www.eltiempocantina.com.  The El Tiempo website provides information regarding the El Tiempo rich and deep history, restaurant locations and hours, menus and menu items, catering, and offers gift cards for sale to the public.

17.    El Tiempo has offered its unique and authentic Tex-mex cuisine to Houstonians at multiple locations under the trademarks, "El Tiempo Cantina" and "Laurenzo's El Tiempo Cantina.  For over sixteen (16) years, El Tiempo has used the foregoing marks in association with its restaurant services.  In addition, El Tiempo has used the stylized "Laurenzo's El Tiempo Cantina" mark in association with restaurant services in the Houston area as shown below:



18.     El Tiempo has also used the mark "El Tiempo Market" in association with a grocery market that offers for sale, *inter alia*, fresh produce and meats, hot food, and dry goods.   Collectively, the forgoing marks are referred to herein as the "El Tiempo Marks".

19.     Since 1998, El Tiempo has invested millions of dollars to develop, promote, and maintain the goodwill that has become associated with the El Tiempo Marks.

20.     As a result of substantial success in the Houston restaurant market and extensive advertising and promotion and growth of the brand, the El Tiempo Marks have become widely and favorably known as Mexican "Tex-Mex" restaurants originating from, sponsored by, or associated with El Tiempo.   The Houston public has come to associate the well-known and distinctive El Tiempo Marks with the restaurants that are owned and operated by El Tiempo.   The distinctive El Tiempo Marks have achieved significant and valuable good will in Houston, Texas and the surrounding areas.   Through extensive and constant use of the El Tiempo Marks, El Tiempo has the exclusive right to use the El Tiempo Marks in association with restaurant services in Houston, Texas and the surrounding areas.   In short, El Tiempo has a protectable interest in the El Tiempo Marks.

21.    El Tiempo has continued to build its brand by expanding to open additional restaurant locations under the El Tiempo Marks.

**Defendants' Unlawful Activities**

22.    In May 2013, El Tiempo entered into a Service Mark License Agreement (the "Agreement") with LGHG.  LGHG has a lease hold interest in a commercial tract of real estate in Harris County, Texas, located at RES C BLK 1, POINT NASA SEC 2, being more commonly known as 20237 Gulf Freeway, Webster, Texas 77598 (the "Property").  LGHG is owned and operated by Defendants Ross, Elam, Magruder, JF and DF and the Felt family and their control was a key reason for El Tiempo to enter into the Agreement.  *See* the Agreement at ¶¶ 1.1 and 8.1F attached hereto as Exhibit "A."

23.    El Tiempo owns and operates all of the trade dress, trade names, service marks, intellectual and proprietary property and information, good will, and other items ("Trade Dress")[1] associated with its El Tiempo restaurants and the El Tiempo Marks. MKWW is the construction arm of El Tiempo which oversees and performs construction,

---

[1] Some of the items included in the definition of *Trade Dress* are:  all signage whether attached or painted on building or property; anything printed using the El Tiempo Marks, including the use of the name *El Tiempo* Global or other similar mention of *El Tiempo* on business cards, stationery, invoices, purchase orders, emails, matches, promotional or marketing materials, guest check presenters and anything else bearing the name *El Tiempo*; all recipe books, notes, pages bound or unbound, photos of menu items, descriptions of food items on or off the menu, notes taken about menu items or other information on food or beverage and plating which become part of the work product; all training manuals, materials, receipts and subsequent notes which are published in hard copy or electronically stored on a computer, mobile phone or other electronic recording device; all tables, chairs, stools, wooden stand up long bars (burros) and furniture uniquely designed and manufactured to the specifications of *El Tiempo* (much of which has been branded ETC), artwork, pictures of Laurenzo family members past or present; unique Spanish style lighting fixtures designed and manufactured in Monterrey Mexico especially for *El Tiempo*, whether bearing the *El Tiempo* name or not; all interior and exterior color schemes; all architectural, mechanical, and construction designs including Plans to the unique parapet design.

maintenance and repairs of El Tiempo's restaurants pursuant to proprietary plans and specifications.

### A.    Domco/LGHG Relationship

24.    The purpose of the Agreement was to allow LGHG to use the Trade Dress and the El Tiempo Marks at the Property as well as proprietary recipes, designs, know how, procedures, management techniques and other items (the "Concepts")[2] used by El Tiempo.  The Agreement covers the terms, conditions and obligations of LGHG's use of the Trade Dress and Concepts.  By its express terms, time is of the essence for all deadlines in the Agreement.  *See* Exhibit "A," ¶ 11.14.

25.    LGHG was to begin construction of the El Tiempo restaurant at the Property and have restaurant operations underway and open within 12 months of the effective date in the Agreement or by May 1, 2014.  *See* Exhibit "A," ¶ 1.11.  As of the filing of this lawsuit and even after notices of default on April 16, 2014 and August 5, 2014, and opportunities to cure, the construction on the El Tiempo restaurant remains unfinished, the City of Webster has revoked the original permits, and the balance of construction invoices remain unpaid.

### B.    MKWW/LGHG Relationship

26.    LGHG entered into an open account agreement with MKWW to work on the design and construction of the El Tiempo restaurant at the Property.  The terms were

---

[2] Some of the items included in the definition of *Concepts* are: specific recipes (and will continue to develop new recipes in the future which are part of the "Concept" as that term is defined herein), specific plate presentations, layout of kitchen, ambiance factors, colors, decorations, creative designs, service systems, logos, procedures, inventions, trade secrets, know how, intellectual property, plans and methods of operating a first class Mexican restaurant, and specific ways and methods of doing delivery and catering of food and drinks (hereinafter referred to as the "Concept").

that MKWW would serve as the general contractor and design consultant and consult on the design and manage the construction, all to be paid by LGHG.  Since MKWW was fully aware of all proprietary designs, colors, layouts and operations of an El Tiempo restaurant, LGHG agreed to these terms and immediately work began on the design of restaurant.  LGHG was emphatic about having at least 100 tables.  The architectural, MEP and structural designs, as well as the entire permitting process was completed by early October when construction began.

27.    The process ran adequately until March 2014 when LGHG bounced a check.  Up to this point, invoices were being paid, albeit some were late, and three major subcontractors were delayed due to LGHG's inability to make proper and timely down payments for the A/C, Signs, and Hood Vent manufacturers.  These subs were delayed for about a month while LGHG saved money to make the down payments.  LGHG untimely paid and failed to pay MKWW for invoices beginning on March 25, 2014.  An opportunity to cure was given and two checks totaling $192,033.36 were issued to MKWW.  LGHG requested that MKWW hold the checks and not deposit them until April 7, 2014.  Both of these checks bounced again and remain unpaid.  On April 16, 2014, two notices of default of the Agreement were given to LGHG for the unpaid money owed to MKWW.  *See* Exhibit "B" attached hereto.  MKWW continued to work with LGHG to cure the defaults by allowing additional time, but LGHG finally admitted that it could not pay the outstanding balance nor any further money needed to complete the build out.  LGHG's failure to pay Plaintiff constitutes breach of contract between MKWW and LGHG and violates the terms of the Agreement with El Tiempo.  But for LGHG's late payment of deposits and subsequent failures to pay invoices, construction

could have been completed and operations could have started at the El Tiempo restaurant in Webster, Texas by May 1, 2014.

28.    In order to protect its interests, on May 6, 2014 MKWW filed an M&M Lien with the real property records to secure the debt.  *See* Exhibit "C" attached hereto. On June 9, 2014 a supplemental lien was filed for a greater value.  *See* Exhibit "D" attached hereto.   As of the filing of this lawsuit LGHG owes an outstanding balance of $760,796.13 after all offsets and credits.  *See* Exhibit "E."

**C.    LGHG's additional Breaches of the Agreement**

29.    On August 5, 2014 another demand was made to LGHG to pay the outstanding balance and return the Trade Dress and Concepts.  *See* Exhibit "F" attached hereto.  Despite Domco's notice to LGHG that the Agreement was in breach and that all Trade Dress and Concept materials must be returned, the signs taken down, and construction plans returned; LGHG has refused to return the Trade Dress and Concepts and has kept these materials asserting that they now belong to LGHG.   At no time did LGHG ever own the Trade Dress or Concepts, but was allowed to use them pursuant to the license requirements of the Agreement.  *See* Exhibit "A," pg. 1, last ¶, ¶¶1.10, 2.1, 2.5.   LGHG has refused to return the Trade Dress and Concepts in violation of the Agreement (*See* Exhibit "A," ¶¶2.1, 2.3, 2.5, 8.3), and has falsely represented to the City of Webster that the construction plans (which are also proprietary) belong to LGHG and that it had MKWW's consent to transfer the building permit to one of LGHG's affiliated entities, all to induce the city into transferring the existing permit to the affiliate entity. This is a violation of ¶¶ 2.1 and 8.1E of the Agreement.

30.　　LGHG has also asserted to El Tiempo's personnel that regardless of any breach, it intends to open an El Tiempo restaurant at the Property using El Tiempo's Concepts and the El Tiempo Marks.  This violates the Agreement by keeping and using the Concepts and the El Tiempo Marks as well as the two year non-competition portion of the Agreement.  *See* Exhibit "A," ¶¶ 1.1, 2.2, 7.1 and 8.3.  Defendants continue to willfully violate the Agreement by advertising for new employees using the El Tiempo Marks.

31.　　On August 15, 2014, El Tiempo filed an Original Verified Petition in Harris County District Court and sought a temporary restraining order.  The ancillary court denied El Tiempo's request for a temporary restraining order.  The 151st Judicial District Court planned to conduct an evidentiary hearing on El Tiempo's motion for temporary injunction, but that hearing was not scheduled as of the date of the filing of this Complaint.  Meanwhile, Defendant's unlawful conduct escalated due to Defendants' continued and additional use of the El Tiempo marks and additional postings that use the El Tiempo Marks on September 15, 2014 (see below).  Accordingly, El Tiempo determined it was necessary to bring this action under federal law to this Court in the Southern District of Texas.

32.　　On September 15, 2014, Defendants published the following:



33.     Below is Defendants' additional and further improper use of the El Tiempo Mark (logo) displayed on Defendant's Internet website located at www.lghospitalitygroup.com.



34.     Upon information and belief, Defendants continue to use the El Tiempo Marks in association with restaurant services in Houston, Texas and continue to promote and advertise their restaurant services under El Tiempo's Marks.

35.     Defendants' actions have caused, and will continue to cause, El Tiempo monetary, reputational, and other damages.

36.     Upon information and belief, Defendants will continue to infringe upon El Tiempo's trademark rights and will continue to falsely advertise that their restaurant services originate from, are affiliated with, or are sponsored by El Tiempo.

37.     Upon information and belief, Defendants' acts of infringement and unfair competition are willful and carried out in bad faith, or with a reckless disregard for, or with willful blindness to El Tiempo's rights, for the purpose of trading on El Tiempo's reputation.

38.     The intentional nature of Defendants' unlawful acts renders this an exceptional case within the meaning of 15 U.S.C. § 1117(a).

39.     El Tiempo seeks preliminary injunctive relief whereby, inter alia, Defendants are enjoined from using the El Tiempo Marks or any other confusingly similar mark in association with restaurant services.

## COUNT I
## FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. § 1125(a)

40.     The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

41.     This is a claim for false designation of origin and unfair competition arising from Defendants' unlawful acts, including, without limitation, making false and misleading representations or descriptions of fact by claiming to be affiliated with or associated with El Tiempo, which is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' goods and/or services with the goods and/or services offered to consumers in violation of 15 U.S.C. § 1125(a).

42.     Defendants' conduct is an unlawful attempt to trade on the goodwill that El Tiempo has developed and achieved over many years all to the damage of El Tiempo.

43.     By their conduct, Defendants have caused El Tiempo irreparable harm and injury and will continue to do so unless restrained and enjoined by this Court.

44.    El Tiempo has no adequate remedy at law.

**COUNT II**
**TRADEMARK INFRINGEMENT**
**Texas Business and Commerce Code § 16.102 *et seq.***

45.    The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

46.    El Tiempo alleges a claim for trademark infringement.

47.    Defendants' conduct is likely to cause confusion, mistake, or deception as to the source or origin of Defendants' goods and/or services, or the affiliation, sponsorship, or other relationship between the parties in violation of Texas Business and Commerce Code § 16.102 *et seq*.

48.    Defendants' conduct is an unlawful attempt to trade on the goodwill that El Tiempo has developed and achieved over many years all to the damage of El Tiempo.

49.    By their conduct, Defendants have caused El Tiempo irreparable harm and injury and will continue to do so unless restrained and enjoined by this Court.

50.    El Tiempo has no adequate remedy at law.

**COUNT III**
**INJURY TO BUSINESS REPUTATION-TRADEMARK DILUTION**
**Texas Business and Commerce Code § 16.103 *et seq*.**

51.    The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

52.    Defendants' conduct is likely to injure El Tiempo's business reputation, in violation of Texas Business and Commerce Code § 16.103 et seq.

53.    Defendants' conduct is likely to dilute the distinctive quality of the El Tiempo trademarks in violation of Texas Business and Commerce Code § 16.103 *et seq*.

54.    By their conduct, Defendants have caused El Tiempo irreparable harm and injury and will continue to do so unless restrained and enjoined by this Court.

55.    El Tiempo has no adequate remedy at law.

**COUNT IV**
**UNFAIR COMPETITION**
**Texas Common Law**

56.    The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

57.    El Tiempo alleges a claim for unfair competition under Texas common law.  Defendants' conduct misappropriates El Tiempo's valuable trademark rights and falsely trades on the goodwill symbolized by the distinctive El Tiempo trademarks, and is likely to cause confusion, or deception, or mistake among consumers.

58.    By their conduct, Defendants have engaged in unfair competition in violation of the common law of the State of Texas.

59.    By their conduct, Defendants have caused El Tiempo irreparable harm and injury and will continue to do so unless restrained and enjoined by this Court.

60.    El Tiempo has no adequate remedy at law.

**COUNT V**
**UNJUST ENRICHMENT**
**Texas Common Law**

61.    The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

62.    Defendants' acts constitute unjust enrichment under the common law of the State of Texas.

## COUNT VI
## Breach of Contract

63.     The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

64.     (1)     LGHG's Breach of the Agreement.  El Tiempo (*via* Domco) also makes a claim for breach of the Agreement and seeks injunctive relief whereby the Court orders Defendants to return all property that Defendants have wrongfully retained in violation of multiple provisions of the Agreement, as well as the attorneys' fees incurred to enforce the Agreement pursuant to Texas Civil Practice and Remedies § 38.001 *et seq.* and pursuant to ¶ 11.10 of the Agreement.

65.     (2)     LGHG's Breach of the MKWW Agreement.  El Tiempo (*via* MKWW) makes a claim for breach of contract and the damages proximately caused to El Tiempo from said breach in the amount of $760,796.13.  El Tiempo further seeks and award of reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies § 38.001 *et seq.* and pursuant to ¶ 11.10 of the Agreement.  As of the filing of this Complaint, LGHG owes El Tiempo monetary damages in the amount of $760,796.13 after all offsets and credits, in addition to attorneys' fees, costs of court, and interest allowed by law.  All conditions precedent were performed or have occurred.

66.     El Tiempo is further entitled to a judgment against Ross, Elam, Magruder, JFelt, and DFelt because each individual is an officer or manager of LGHG which was involuntarily forfeited by the Texas Secretary of State before the debts were incurred and the wrongful acts committed; accordingly, the individual defendants are jointly and severably liable to El Tiempo for the debts, damages, and fees.

## COUNT VII
## TEXAS THEFT LIABILITY ACT

67.    The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

68.    Defendants unlawfully secured physical property including items that constitute Trade Dress and Concepts belonging to El Tiempo for Defendants' sole use and benefit.  Defendants obtained the materials and upon default of the Agreement have refused to return the physical property including Trade Dress and Concepts in violation of the Agreement.  Defendants intend to deprive El Tiempo of these materials thereby damaging El Tiempo.

69.    As a direct result of Defendants' conduct, Plaintiff seeks injunctive relief to stop any further use of El Tiempo's Trade Dress and Concepts by Defendants and seeks actual damages, statutory damages, exemplary damages and legal fees as allowed by Tex. Civ. Prac. & Rem. Code 134.005(b).

## COUNT VIII
## MISAPPROPRIATION OF TRADE SECRETS

70.    The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

71.    After notice and demand, Defendants have refused to return the Trade Dress and Concepts belonging to El Tiempo in violation of the Agreement.  Defendants are taking advantage of the possession of these materials for their own benefit.  These items are proprietary information and materials developed by El Tiempo over many years and are highly protected and guarded from dissemination except to those who agree to be bound by the confidentiality covenants in the Agreement.  Defendants have breached the

Agreement and the covenants therein, and damaged El Tiempo by their use of the Trade Dress and Concepts.

72.     As a direct result of Defendant's conduct, El Tiempo seeks remedies of injunctive relief to keep Defendants from using the Trade Dress and Concepts as well as legal fees for enforcement as allowed by ¶ 11.10 of the Agreement.

## COUNT IX
## FORCLOSURE ON M&M LIEN

73.     The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

74.     The Texas constitution provides a lien to a contractor which furnishes labor and materials for the construction or improvements to real property.  The lien secures payment for the labor performed and materials incorporated and affixed to the real property.  El Tiempo filed an M&M Lien Affidavit and Supplemental M&M Lien Affidavit against the Property owned by Kobayashi, which El Tiempo improved pursuant to MKWW's contract with LGHG.  El Tiempo's M&M Lien Affidavits are attached hereto as Exhibits "C" and "D" and incorporated herein by reference.  El Tiempo seeks to foreclose on its liens against LGHG's leasehold interest in the Property and to apply any proceeds from the foreclosure towards the debt owed to El Tiempo.

## REQUEST FOR PRELIMIINARY INJUNCTION
## AND PERMANENT INJUNCTION

75.     The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

76.     El Tiempo seeks to enjoin Defendants and their agents and representatives from using the El Tiempo's Marks for restaurant goods and/or services during this suit, because this activity infringes upon El Tiempo's rights in the El Tiempo trademarks.

77.     There is a substantial likelihood that El Tiempo will prevail on the merits. Defendants' unauthorized use of the El Tiempo Marks in association with identical restaurant services falsely indicates to consumers that Defendants' restaurant goods and/or services originate from, are approved by, are sponsored by, are licensed by, or are affiliated with El Tiempo or are otherwise associated with El Tiempo. Defendants' unauthorized use of the El Tiempo Marks in the manner described above is likely to cause confusion, to cause mistake, or to deceive customers and potential customers of the parties by suggesting some affiliation, connection, or association of Defendants with El Tiempo.

78.     If the court does not grant a preliminary injunction, Defendants will continue their activities that infringe El Tiempo's trademark rights by offering for sale and/or selling infringing goods and/or services, Mexican restaurant goods and/or services in this District. Defendants will continue to hire employees, promote and advertise their restaurant services under El Tiempo's Marks and generally hold themselves out as El Tiempo, all to the irreparable harm of El Tiempo and to cause harm to the public via consumer confusion as to the source, origination, affiliation, and/or sponsorship of Defendants' goods and/or services.

79.     El Tiempo is suffering irreparable injury and that injury will continue if the court does not enjoin Defendants from advertising, marketing, offering for sale, and/or selling Mexican restaurant goods and/or services bearing El Tiempo's Marks.  In

addition, Defendants' use of El Tiempo's Marks in association with identical goods and/or services is causing El Tiempo to suffer irreparable injury because El Tiempo's trademarks will suffer from dilution and generic use.

80.     Defendants will not suffer undue hardship or loss as a result of the issuance of a preliminary injunction.

81.     Issuance of a preliminary injunction would not adversely affect the public interest.  In fact, it will immediately promote the public interest by eliminating consumer confusion as to the source, affiliation, sponsorship and/or relationship between the parties in the marketplace.

82.     El Tiempo asks the court to set this request for preliminary injunction for hearing at the earliest possible time and, after hearing the request, to issue a preliminary injunction against Defendants.

## ATTORNEYS' FEES

83.     The factual allegations set forth above are incorporated herein for all purposes as if fully set forth at length.

84.     This is an exceptional case, and El Tiempo is entitled to an award of its attorneys' fees under the Lanham Act.  This case is exceptional because there is a high degree of culpability and Defendants conduct was willful.  *Pebble Beach Co. v. Your 18 I, Ltd.*, 155 F.3d 526, 555 (5th Cir. Tex. 1998).

85.     El Tiempo is also entitled to recover reasonable and necessary attorneys' fees under Texas Civil Practice and Remedies Code Chapter 38 for the claim of breach of contract.   All conditions precedent necessary for recovery of attorneys' fees was completed.

## JURY DEMAND

86.    El Tiempo respectfully requests a trial by jury on all issues so triable.

## PRAYER

WHEREFORE, El Tiempo respectfully asks for judgment against Defendants as follows:

1.    Defendants, their officers, agents, servants, employees, and attorneys, and all persons acting in active concert or participation with any of them, be preliminarily and permanently enjoined from the following:

a.    imitating, copying, duplicating, distributing, manufacturing, producing, circulating or otherwise making use of any of the El Tiempo Marks or any other confusingly similar designation;

b.    using any unauthorized copy or colorable imitation of the El Tiempo Marks, or false designation of origin or description, in such a faction as is likely to relate or connect Defendants with El Tiempo or to cause confusion among consumers as to any affiliation or sponsorship, or any connection whatsoever;

c.    claiming to have any affiliation with El Tiempo or its owners or chefs or restaurants;

d.    engaging in any other activity constituting false advertisement, unfair competition, or infringement of the El Tiempo Marks or El Tiempo's exclusive rights in, or to use, or to exploit the same;

e.    assisting, aiding, or abetting another person or business entity in engaging or performing any of the activities enumerated in paragraphs (a) – (d) above;

2.      find that Defendants are jointly and severally liable for the causes of action alleged against them in this Complaint;

3.      El Tiempo have and recover from Defendants, jointly and severally, actual and punitive damages in excess of the minimal jurisdictional limit of this Court, pre-judgment and post judgment interest as provided by law, reasonable attorney's fees and costs of Court; and,

4.      El Tiempo have such other and further relief, at law or in equity, as to which they may be justly entitled.

Respectfully submitted,

**MEYER, KNIGHT & WILLIAMS, LLP**

_____/s/Nathan A. Steadman_____
Nathan A. Steadman
Attorney-in-Charge
Texas Bar No. 19089450 / Fed. No. 13113
Meyer, Knight & Williams, LLP
8100 Washington Avenue, Suite 1000
Houston, Texas 77007
Tel: (713) 868-2222
Fax: (713) 868-2262
Email: nas@mkwlaw.com

OF COUNSEL:
Paul S. Beik
Texas Bar No. 24054444
S.D. Tex. ID No. 642213
**BEIK LAW FIRM, PLLC**
8100 Washington Avenue, Suite 1000
Houston, Texas 77007
Tel: (713) 869-6975
Fax: (713) 868-2262
Email: paul@beiklaw.com